UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JULIET E.,

                Plaintiff,

    v.

NANCY A. BERRYHILL, Deputy
Commissioner of Social Security for
Operations,

                Defendant.

CASE NO. C18-5116-MAT

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL

Plaintiff proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's application for Disability Insurance Benefits (DIB) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is REMANDED for further administrative proceedings.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1971.[1] She completed high school and previously worked as an optometric assistant, medical record coder/biller, and order clerk. (AR 44-52.)

Plaintiff filed a DIB application on May 12, 2015, alleging disability beginning April 3,

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER
PAGE - 1

2015. (AR 197-98.) She is insured for DIB through December 31, 2020. (*See* AR 19.) Her application was denied initially and on reconsideration.

On February 23, 2017, ALJ Allen Erickson held a hearing, taking testimony from plaintiff and a vocational expert (VE). (AR 35-94.) On May 30, 2017, the ALJ issued a decision finding plaintiff not disabled. (AR 17-29.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on December 26, 2017 (AR 1-6), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## **JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## **DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's migraine headaches, pain disorder, major depressive disorder, generalized anxiety disorder, and bipolar disorder severe. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform

a full range of work at all exertional levels, but with the following non-exertional limitations: can tolerate occasional exposure to bright light (defined as light brighter than standard room lights), loud noise (defined as louder than a basic office environment), concentrated exposure to concentrated levels of dust, fumes, odors, gases, and other pulmonary irritants, and temperature and humidity extremes; can understand, remember, and apply short and simple instructions, while performing routine and predictable tasks; cannot work in a fast-paced production type environment; can make simple decisions and tolerate exposure to only a few workplace changes; and can tolerate occasional interaction with the public and co-workers. With that assessment, the ALJ found plaintiff unable to perform her past relevant work.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of the VE, the ALJ found plaintiff capable of performing other jobs, such as work as a stores laborer, marker, and garment folder.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.") Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278

F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in assessing medical opinions from examining psychologists Drs. Cynthia Collingwood and Terilee Wingate and in evaluating her subjective claims, and the impact of those errors on the decision at steps four and five. She requests remand for an award of benefits or, alternatively, further administrative proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

## Medical Opinions

In general, more weight should be given to the opinion of a treating doctor than to a non-treating doctor, and more weight to the opinion of an examining doctor than to a non-examining doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where, as here, the record contains contradictory opinions, an ALJ may not reject a treating or examining physician's opinion without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

A. <u>Dr. Cynthia Collingwood</u>

Dr. Collingwood conducted a psychological consultative evaluation on January 17, 2017. The resulting narrative report reflects her review of records and administration of testing. (AR 477-85.) On Mini-Mental Status Exam (MMSE), plaintiff appeared quiet and somewhat reserved, with intermittent eye contact, overall depressed mood, and flat affect; made two errors performing serial seven subtractions; tended to give concrete, rather than abstract responses; and achieved a score of 26/30, with deficits primarily having to do with impaired concentration, rather than notable cognitive deficits. (AR 481-82.) She scored in the average range on Trails A and borderline impaired on Trails B, due to breaks in concentration and losing her place; in low average range on the Symbol Digit Modalities Test, consistent with poor concentration; 14/15 on the Rey

test, indicating a valid attempt at testing; in the severe range on depression and anxiety scales; and demonstrated poor inner coping skills on another inventory. (AR 482-83.) Dr. Collingwood noted testing in Dr. Wingate's July 2015 evaluation showing memory in the average range, but with deficits primarily related to attention and concentration and inability to maintain extended focus, and similar deficits on Trails B. (AR 483.) Dr. Collingwood stated plaintiff "appears to be generally cognitively intact, but is significantly limited by the effects of depressive symptoms", and that Dr. Wingate's evaluation "noted she would be unlikely to persist at work activities in a competitive setting without interruption from psychiatric symptoms." (*Id*.)

Dr. Collingwood also assessed a Global Assessment of Functioning (GAF) score of 40, *see* Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) (DSM-IV-TR) (GAF between 31 and 40 describes "[s]ome impairment in reality testing or communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood"), and opined: "At present, her depressive symptoms are significant enough to impair her ability to persist for a normal work day or a work week in a competitive setting." (AR 484.) Dr. Collinwood stated plaintiff sought appropriate treatment, but had a poor response despite several types of intervention, appeared to derive some benefit from a service dog, and would likely have increased absenteeism, as at her last job, and quit to avoid being fired. (*Id*.) While plaintiff wanted to return to work, "it is highly unlikely she would be successful in the next year[,]" but improvement may occur with time and continued treatment. (*Id*.)

On February 17, 2017, Dr. Collingwood completed a Medical Source Statement rating plaintiff's degree of mental functioning. (AR 486-89.) Among other findings, Dr. Collingwood assessed plaintiff's ability to understand and remember very short and simple instructions, make simple work-related decisions, and ask simple questions or request assistance would preclude

performance/productivity for ten percent of an eight-hour workday; her ability to work in coordination or proximity to others and to accept instructions from and respond appropriately to criticism from supervisors to preclude performance/productivity for twenty percent of the workday; and her ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual, complete a normal workday and workweek, and interact appropriately with the general public would preclude performance/productivity for thirty percent of the workday. (*Id.*) Plaintiff would be absent five days or more a month, would be off-task more than thirty percent of the workday, and was unable to persist in a competitive work setting for a normal workday or workweek. (AR 489.) "She had increasing symptoms over the last few years, and her absenteeism has increased along with it." (*Id.*)

The ALJ described Dr. Collingwood's January 2017 evaluation, including various testing results and plaintiff's reporting of her history and symptoms. (AR 23.) For example, plaintiff endorsed occasionally spending entire days in bed; performs household chores and cares for her animals, but received help from her daughter; had difficulty preparing dinner when she was having trouble thinking; and neglected her self-care and was more withdrawn. (AR 23-24.) The ALJ also noted plaintiff's MMSE score and Dr. Collingwood's observation that plaintiff "appeared generally cognitively intact." (AR 24.)

In assessing the opinion evidence, the ALJ noted Dr. Collingwood's opinion of "symptoms . . . significant enough to impair [plaintiff's] ability to persist for a normal workday or workweek in a competitive setting[,]" and outlined the findings on the Medical Source Statement. (AR 26.) She found Dr. Collingwood's opinion not consistent with plaintiff's minimal counseling, and inconsistent with the relatively good mental status examinations (MSEs) throughout the record.

(*Id*. (citing AR 348-54, 476-89).) The ALJ further considered that Dr. Collingwood's opinion "is provided in a 'check the box' form that provides only four specific categories: no limitation, 10 percent preclusion, 20 percent preclusion, and 30 percent preclusion." (AR 26.) He reasoned: "By using the term preclusion versus difficulty, it presents the claimant as more limited than reflected in the overall record. This form lends itself to less precisely describing the claimant's limitations because it forces the claimant into a higher category than actually representative of the claimant's limitations." (AR 26-27.) The ALJ therefore assigned Dr. Collingwood's opinion little weight.

The ALJ also separately addressed the GAF scores in the record, giving them very little weight "because they lack probative value" and did not convey information that furthered the functional analysis. (AR 24-25.) That is, while the regulations direct a function-by-function assessment of the claimant's maximum RFC, *see* Social Security Ruling (SSR) 96-9p, the explanations accompanying the GAF scores show an attempt to rate symptoms *or* functioning, *see* DSM-IV-TR at 32. In this case, it was not evident what the GAF scores were rating, which was particularly relevant to the analysis of a claimant's ability to perform basic work activities, "as symptoms are an individual's 'own description' of his or her impairments." (AR 25 (citing SSR 96-7p and 65 Fed. Reg. 50,746 at 50, 746-50, 765 (August 21, 2000) (the GAF scale "does not have a direct correlation to the severity requirements in our mental disorder listings.")))

Plaintiff does not demonstrate error in the ALJ's consideration of the GAF score from Dr. Collingwood. "'A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment.'" *Garrison v. Colvin*, 759 F.3d 995, 1002 n.4 (9th Cir. 2014) (quoting *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998)). The most recent version of the DSM does not include a GAF rating for assessment of

ORDER
PAGE - 7

mental disorders. DSM-V at 16-17 (5th ed. 2013). While the Social Security Administration continues to receive and consider GAF scores as opinion evidence, a GAF score cannot alone be used to "raise" or "lower" someone's level of function, and, unless the reasons behind the rating and the applicable time period are clearly explained, it does not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis. Administrative Message 13066 ("AM-13066"). *Accord Garrison*, 759 F.3d at 1002 n.4 ("Although GAF scores, standing alone, do not control determinations of whether a person's mental impairments rise to the level of a disability . . . , they may be a useful measurement. We note, however, that GAF scores are typically assessed in controlled, clinical settings that may differ from work environments in important respects.") *See also Hughes v. Colvin,* No. 13-35909, 2015 U.S. App. LEXIS 6131 at *2 (9th Cir. Apr. 15, 2015) ("The ALJ did not err in failing to address Dr. Caverly's GAF score, because a GAF score is merely a rough estimate of an individual's psychological, social, or occupational functioning used to reflect an individual's need for treatment, but it does not have any direct correlative work-related or functional limitations.") The ALJ here properly considered, but reasonably discounted the GAF scores in the record upon finding a lack of clarity as to the reasons behind the ratings assigned. (*See, e.g.*, AR 484 (Dr. Collingwood's GAF rating, unaccompanied by any explanation).)

Plaintiff does, however, identify error in the ALJ's consideration of the other opinion evidence from Dr. Collingwood. As the Commissioner observes, an ALJ may reject "'check-off reports that [do] not contain any explanation of the bases of their conclusions.'" *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996)). *See also Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) ("[T]he regulations give more weight to opinions that are explained than to those that are not."). However, the ALJ did not reject

ORDER
PAGE - 8

the Medical Source Statement completed by Dr. Collingwood because it lacked explanations for the conclusions reached. The ALJ instead criticized the rating system utilized on the form, identifying a lack of precision and a tendency to present a claimant as more limited than may be warranted. To the extent the ALJ found the degree of limitation identified by Dr. Collingwood on the form inconsistent with the overall evidence in the record, this could serve as a specific and legitimate reason for discounting her opinion. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (inconsistency with the record properly considered by ALJ in rejection of physician's opinions). However, with the focus on the terminology and rating system as a general matter, the ALJ's reasoning is not clear.

Dr. Collingwood did not, in any event, merely complete a "check box" form. She specifically noted that the Medical Source Statement should be read in conjunction with her narrative report. (*See* AR 489 ("Please see extended clinical interview and assessment in the accompanying report.")) While earlier recounting some of the content of that narrative, the ALJ focused almost exclusively in the Medical Source Statement ratings in discussing the opinion of Dr. Collingwood. (AR 26-27.) Even then, the only portion of the narrative report discussed was also included on the Medical Source Statement. (*See* AR 26 ("The claimant's symptoms were significant enough to impair her ability to persist for a normal workday or workweek in a competitive setting."), AR 484 ("At present, her depressive symptoms are significant enough to impair her ability to persist for a normal work day or a work week in a competitive setting."), and AR 489 ("Ms. Elliott is unable to persist in a competitive work setting for a normal work day or work week.")) The ALJ's analysis does not address other pertinent aspects of the narrative report, such as Dr. Collingwood's opinion plaintiff appeared generally cognitively intact, but significantly limited by the effects of her depressive symptoms. (AR 483.)

ORDER
PAGE - 9

Nor are the ALJ's errors cured by the two other reasons provided for the rejection of Dr. Collingwood's opinion. An ALJ may reject a physician's opinion upon finding it inconsistent with evidence of a claimant's treatment or with other medical evidence in the record. *See, e.g., Tommasetti*, 533 F.3d at 1041; *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). In this case, the ALJ's failure to fully account for Dr. Collingwood's narrative report calls into question his finding of inconsistency with the evidence of minimal counseling. Dr. Collingwood's report includes a detailed discussion of plaintiff's treatment, as well as her conclusion that, while plaintiff had sought appropriate treatment and was compliant with treatment received, she did not ultimately succeed despite "several types of intervention." (AR 478, 484 ("[S]he has sought treatment variously from her primary provider, at Sea Mar Clinic in October 2015, which didn't have sufficient staff for the counseling she had hoped for, and eventually went to Behavioral Health Resources where she has been engaged in therapy since July 2016."; "Although she has tried various medications as well as psychotherapy, over time, medications become less effective and she has had to change medications. She has been compliant with treatment, and according to her physician, her history of thyroid problems does not impact significantly on her condition.")) Also, in finding inconsistency with other MSEs, the ALJ cited only to the MSEs conducted by Drs. Collingwood and Wingate, both of which included at least some abnormal findings (AR 350, 481-83); *see also* AR 399-401 (at an October 2015 MSE, plaintiff presented with slumped posture and anxious and depressed affect, demonstrated impaired attention span, abstract thinking, calculation ability, and slightly impaired intelligence, had no orientation to time, and had impaired insight, judgment, recent memory, and thought content).)

The ALJ, in sum, failed to sufficiently address the opinion evidence from Dr. Collingwood. This error undermines the substantial evidence support for the ALJ's conclusions and necessitates

remand.

Contrary to plaintiff's contention, the Court finds no basis for crediting Dr. Collingwood's opinion as true and remanding for an award of benefits. Outstanding issues remain in this case and further administrative proceedings would serve a useful purpose, including full consideration of all medical opinion evidence of record. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014); and *Garrison*, 759 F.3d at 1019-21. An award of benefits relies on the "existence of a disability, not the agency's legal error." *Brown-Hunter*, 806 F.3d at 495 ("To condition an award of benefits only on the existence of legal error by the ALJ would in many cases make "disability benefits . . . available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A).") *Accord Strauss v. Comm'r of Social Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011) ("A claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be.") Because the record in this case remains "uncertain and ambiguous," it is properly remanded for further proceedings. *Treichler*, 775 F.3d at 1105.

B.  Dr. Terilee Wingate

Dr. Wingate conducted a psychological evaluation of plaintiff in July 2015. (AR 348-53.) She reviewed the smaller amount of medical records then available for review, conducted a MSE, and administered tests. (AR 348, 350-51.) On MSE, plaintiff presented with a blunt affect, performed a five-digit span backward, recalled three of four items after a delay and the fourth item with a clue, performed serial threes to twenty with one error and serial sevens from 100 without error, correctly spelled "world" forward and backward, identified current news events, had intact abstract reasoning, accurately interpreted proverbs, and displayed an average fund of knowledge. (AR 23, 350.) On testing of memory, plaintiff demonstrated no significant differences in her levels

of visuals and auditory memory functioning, had some difficulty with visual attention, particularly with more complex tasks, and performed in the average range for immediate and delayed memory. (AR 23, 351.) The ALJ found this to indicate plaintiff "had some difficulties, but she would likely be able to perform simple routine tasks." (AR 23.)

Dr. Wingate opined plaintiff could understand, remember, and learn simple and some complex tasks; tends to learn best with verbal instructions, but has some difficulty at this time with multitasking; has difficulty sustaining attention to tasks throughout a daily or weekly work schedule without interruption from anxiety, depressed mood, and fatigue; has poor stress tolerance at this time and when pressures are placed upon her she will withdraw; has sufficient judgment to avoid hazards and make work decisions; can probably work with a supervisor and a few coworkers; and would probably not work well with a lot of coworkers or the general public. (AR 352.)

The ALJ found Dr. Wingate's opinion that plaintiff would have difficulty sustaining attention to tasks throughout a normal work day or work week without interruption "is not specifically preclusive of a full-time work schedule with adequate breaks." (AR 25.) Her lack of neurological follow-up for her migraines or consistent counseling did not support a finding of inability to sustain full time work, "particularly if she were limited strictly to simple routine tasks." (*Id*.) The ALJ also found the opinion generally consistent with plaintiff's performance on MSE and memory testing. He therefore assigned the opinion significant weight.

Plaintiff argues the ALJ erred in ignoring the assessed limitation to working with a supervisor and a few co-workers, and including only a more general limitation on working with the public. She maintains the limitation to "a supervisor" and "a few co-workers" contemplates a very specific workplace setting beyond just occasional public and co-worker contact, and requires a "small and supportive team." (Dkt. 9 at 10.) Plaintiff also argues the ALJ gave short shrift to

ORDER
PAGE - 12

Dr. Wingate's concerns regarding difficulty with sustaining attention to tasks, and failed to provide the necessary specific and legitimate reasons for rejecting her opinion of a limitation on sustaining regular and continuing work. The Court finds no error.

The ALJ is responsible for assessing the medical opinion evidence. When evidence reasonably supports either confirming or reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999). The "final responsibility" for decision issues such as an individual's RFC "is reserved to the Commissioner." SSR 96-5P. *Accord* 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c). An RFC finding need not directly correspond to a specific medical opinion. *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). The ALJ may incorporate the opinions of a physician by assessing RFC limitations entirely consistent with, but not identical to limitations assessed by the physician. *See Turner v. Comm'r of Social Sec. Admin.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010). An ALJ may reasonably decline to adopt the opinion of a physician "offered as a recommendation, not an imperative." *Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1165 (9th Cir. 2008).

Dr. Wingate did not limit plaintiff to working with a small and supportive team. She found plaintiff could probably work with a supervisor and a few coworkers, and would probably not work well with a lot of coworkers or the general public. (AR 352.) The evidence supports and the ALJ rationally interpreted the opinion of Dr. Wingate to allow for plaintiff's ability to work with a supervisor, but no more than occasional interact with co-workers and the public. An alternative interpretation of the opinion of Dr. Wingate does not constitute error.

Nor did the ALJ fail to account for Dr. Wingate's opinion regarding attention and

ORDER
PAGE - 13

concentration. While noting difficulty in sustaining attention to tasks, Dr. Wingate found this impairment mild. (AR 352 ("Her current memory testing revealed some attention difficulties. She also tends to recall verbal information slightly better than visual information. She was observed to have some problems shifting attention as well. These mild impairments in attention and memory are likely due to anxiety and depression, but should certainly be monitored and a referral to a neurologist may be recommended if the problems increase.")) As the Commissioner observes, RFC is the most a claimant can do considering her impairments and limitations. SSR 96-8p. The ALJ here reasonably accounted for the difficulty noted by Dr. Wingate by limiting plaintiff to performing routine and predictable tasks and precluding work in a fast-paced production type environment. (AR 21.) The ALJ also limited plaintiff to simple decisions, tolerating exposure to only few workplace changes, and to understanding, remembering, and applying only short and simple instructions, and declined to adopt Dr. Wingate's opinion plaintiff could perform some complex tasks. (AR 21, 352.) The ALJ rationally interpreted the opinion of Dr. Wingate and his conclusion has the support of substantial evidence. The ALJ need only reconsider this opinion if necessitated by further consideration of the opinion of Dr. Collingwood.

## Subjective Claims

Plaintiff argues the ALJ failed to provide the necessary specific, clear, and convincing reasons to reject her testimony. *See Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). The Court finds no error in the ALJ's assessment of plaintiff's subjective claims. (*See* AR 22-24.) That is, the ALJ reasonably found inconsistency between plaintiff's statements and the medical evidence of record, *see* 20 C.F.R. § 404.1529(c)(4), *Rollins*, 261 F.3d at 857, and *Carmickle*, 533 F.3d at 1161; inconsistency with the evidence of her treatment, *see* 20 C.F.R. § 404.1529(c)(3), SSR 96-7p and SSR 16-3p, and *Tommasetti*, 533 F.3d at 1039; and inconsistency with evidence

ORDER
PAGE - 14

of her activities, *see Molina*, 674 F.3d at 1112-13, and *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). However, the ALJ did fail to adequately consider the opinion of Dr. Collingwood, including her consideration of evidence associated with plaintiff's treatment and other medical evidence of record. This error potentially implicates the ALJ's assessment of plaintiff's symptom testimony. The ALJ should also reconsider that testimony on remand.

### Steps Four and Five

The ALJ's error in the consideration of the opinion of Dr. Collingwood may necessitate further consideration of plaintiff's claim at steps four and five. The ALJ should, as necessary, reassess plaintiff's claim at those steps on remand.

### **CONCLUSION**

For the reasons set forth above, this matter is REMANDED for further proceedings.

DATED this 25th day of January, 2019.

Mary Alice Theiler
United States Magistrate Judge

ORDER
PAGE - 15